**No. 16-4551**

# In The
# United States Court of Appeals
# For The Eighth Circuit

MUHAMMAD ABDURRAHMAN,

*Appellant,*

v.

MARK DAYTON, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF MINNESOTA, LORI SWANSON, IN HER OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF MINNESOTA, AND STEVE SIMON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE FOR THE STATE OF MINNESOTA,

*Appellees.*

───────────────────────

Appeal from the United States Court District Court
for the District of Minnesota
───────────────────────

**APPELLANT'S ADDENDUM**
───────────────────────

Daniel J. Cragg
Vince C. Reuter
Jared M. Reams
ECKLAND & BLANDO LLP
800 Lumber Exchange Building
10 South Fifth Street
Minneapolis, MN 55402
(612) 236-0160

March 9, 2017                                        *Counsel for Appellant*

2017 – BACHMAN LEGAL PRINTING – FAX (612) 337-8053 – PHONE (612) 339-9518 or 1-800-715-3582

# ADDENDUM

## TABLE OF CONTENTS

*Page(s)*

*Abdurrahman v. Mark Dayton et al.*, Case No. 16-cv-4279
    (D. Minn. 2016), Memorandum and Order. .................................. Add001-12

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Muhammad Abdurrahman,                              Case No. 16-cv-4279 (PAM/HB)

               Plaintiff,

v.                                                 **MEMORANDUM AND ORDER**

Mark Dayton, in his official capacity
as Governor of the State of Minnesota,
Lori Swanson, in her official capacity
as Attorney General of the State of
Minnesota, and Steve Simon, in his
official capacity as Secretary of State
for the State of Minnesota,

               Defendants.

_____

This matter is before the Court on Plaintiff Muhammad Abdurrahman's Motion for Temporary Restraining Order ("TRO"). All parties were present at the hearing. The Court will therefore consider the Motion as one for a preliminary injunction pursuant to Fed. R. Civ. P. 65. For the following reasons, the Motion is denied and the case is dismissed with prejudice.

**BACKGROUND**

On August 11, 2016, Minnesota's Democratic-Farmer-Labor ("DFL") Party nominated Muhammad Abdurrahman as an elector to vote for President and Vice President of the United States. (Compl. (Docket No. 1) at ¶ 32.) In accepting this nomination, Abdurrahman pledged to mark his ballot "for the nominees for those offices of the party that nominated me." Minn. Stat. § 208.43. At that time, Hillary Clinton and Tim Kaine had already accepted the Democratic Party's nominations for President and

Vice President.  Abdurrahman eventually became an elector after Clinton and Kaine won the popular vote in Minnesota following the general election on November 8.  (Compl. at ¶ 34.)

On December 19, instead of abiding by his pledge, Abdurrahman presented a ballot nominating Vermont Senator Bernie Sanders for President and Hawaii Congresswoman Tulsi Gabbard for Vice President.  (Id. at ¶ 37.)  Pursuant to Minn. Stat. § 208.46, Minnesota Secretary of State Steve Simon refused to accept and count Abdurrahman's ballot, deemed Abdurrahman to have vacated the office of elector, and appointed an alternate elector who subsequently voted for Clinton and Kaine.  (Id. at ¶ 38, 39.)

That same day, Abdurrahman filed this lawsuit alleging that Secretary Simon, Governor Mark Dayton, and Attorney General Lori Swanson unconstitutionally denied him his right to vote for a candidate of his choosing.  Abdurrahman seeks a preliminary injunction precluding Defendants from transmitting the electors' ballots to Washington D.C. and requiring them to accept, count, certify, and submit his ballot to the President of the Senate.  (Id. at 13-14.)

On December 20, the Office of the Secretary of State transmitted the ballots to the President of the Senate and National Archivist.  (Black Aff. (Docket No. 20) at ¶ 16.)  Those parties received them the next day.  (Id. at Ex. 8.)

## DISCUSSION

### A.   Mootness

Federal courts are courts of limited jurisdiction.  The Constitution confines the federal courts to adjudicating actual "cases" or "controversies"  U.S. Const. art. III § 2, cl. 1.  An actual case or controversy must endure throughout all stages of the litigation otherwise the claim becomes moot and must be dismissed for lack of subject-matter jurisdiction.  See Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528 (2013).

Abdurrahman seeks a preliminary injunction preventing Secretary Simon from transmitting the electoral ballots cast on December 19 to the President of the Senate.  But the ballots have already been transmitted to the President of the Senate.  (See Black Aff. Ex. 7.)  Abdurrahman's claim is therefore moot.

Abdurrahman argues that this case falls within an exception to the mootness doctrine for wrongs "capable of repetition, yet evading review." Fed. Election Comm'n v. Wisconsin Right to Life, Inc., 551 U.S. 449, 462 (2007) (citation omitted).  The Court disagrees.  This exception applies only where (1) the challenged action's duration is too short to be fully litigated before expiration and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.  Id. (quotation and citation omitted).  Abdurrahman meets the exception's first requirement, but not the second.

The time between November 9, when Abdurrahman first knew he would be an elector, and December 20, the day Secretary Simon transmitted the electors' ballots without Abdurrahman's ballot, is clearly too short of a time period for this case to be

fully litigated. In fact, cases involving election issues "are among those most frequently saved from mootness by this exception." Van Bergen v. State of Minn., 59 F.3d 1541, 1547 (8th Cir. 1995) (collecting cases). But for Abdurrahman to meet the exception's second requirement he must again (1) be nominated as an elector by the DFL; (2) during an election when the Democratic Party's nominee wins the Minnesota popular vote; and (3) ignore his pledge and vote for someone other than the Democratic Party's nominee. It is especially unlikely that Abdurrahman could complete the first prerequisite now that he has identified himself as an elector who will ignore his pledge to vote for the Democratic Party's nominee. And although it is theoretically possible Abdurrahman could complete all three prerequisites, a "theoretical possibility is insufficient to overcome the jurisdictional hurdle of mootness." Id.

    **B.**    **Laches**

In addition to mootness, Abdurrahman's claim is also barred by laches. Laches is properly invoked when a party seeking injunctive relief "engaged in unreasonable and inexcusable delay which results in undue prejudice to the other party." Citizens & Landowners Against the Miles City/New Underwood Powerline v. Sec'y, U.S. Dep't of Energy, 683 F.2d 1171, 1175 (8th Cir. 1982) (citations omitted). "An emergency created by a party's inaction is generally afforded less consideration than a scenario in which the emergency is beyond the party's control." Bremer Bank, Nat. Ass'n v. John Hancock Life Ins. Co., No. 06cv1534 (ADM/JSM), 2006 WL 1205604, at *2 (D. Minn. May 2, 2006).

Abdurrahman created his own emergency. Once Clinton and Kaine won the Minnesota popular vote on November 9, Abdurrahman knew that he would become an elector. At that point, planning to ignore his oath and vote for two people other than Clinton and Kaine, Abdurrahman should have brought this lawsuit so the Court could have heard Abdurrahman's claims before Secretary Simon transmitted the Abdurrahman-less ballots to the President of the Senate. Indeed, electors in three other states did just that. See Koller v. Brown, No. 5:16cv7069 (N.D. Cal., filed Dec. 9, 2016); Chiafalo v. Inslee, No. 2:16cv1886 (W.D. Wash., filed Dec. 8, 2016); Baca v. Hickenlooper, No. 1:16cv2986 (D. Colo., filed Dec. 6, 2016). The Ninth and the Tenth Circuits even issued opinions affirming the denial of the electors' motions for preliminary injunctions in two of those cases. See Baca v. Hickenlooper, No. 16-1482 (10th Cir. Dec. 16, 2016); Chiafolo v. Inslee, No. 16-36034 (9th Cir. Dec. 16, 2016).

Abdurrahman argues that those courts denied preliminary injunctive relief because the plaintiffs brought their claims prematurely. Abdurrahman claims that if he brought his claim before December 19, he would have lacked standing. But contrary to statements made at the hearing, none of the district courts in California, Washington or Colorado dismissed the plaintiffs' claims for lack of standing. Rather, each court determined that the plaintiffs failed to meet the requirements for preliminary injunctive relief. In fact, the Tenth Circuit specifically raised the issue and found that the plaintiffs had standing. Baca, No. 16-1482 at 7. Abdurrahman's failure to bring his claim in a timely manner as electors in California, Washington, and Colorado did was unreasonable

5

and inexcusable, and results in undue prejudice to Secretary Simon, Governor Dayton, and Attorney General Swanson. His claim is therefore barred by laches.

### C. Preliminary Injunctive Relief

In addition to mootness and laches, Abdurrahman does not meet the requirements for preliminary injunctive relief. Issuing a preliminary injunction requires a flexible consideration of: (1) the likelihood of success on the merits; (2) whether the movant will suffer irreparable harm absent the restraining order; (3) the balance of the movant's harm with any injury an injunction may inflict on other parties; and (4) the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). A preliminary injunction is "an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008).

#### 1. Likelihood of success on the merits

Because he seeks to enjoin the implementation of a duly enacted state statute, Abdurrahman must meet the "more rigorous standard" that he is "likely to prevail on the merits," rather than that he has a "fair chance of prevailing." See Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds, 530 F.3d 724, 732-33 (8th Cir. 2008).

Abdurrahman's underlying claim is that the Uniform Faithless Presidential Electors Act (the "UFPEA"), codified in Minnesota at Minn. Stat. §§ 208.40, et seq., is unconstitutional because it strips electors of their power to vote, as well as their power to count, certify, and transmit their votes to the President of the Senate. (Pl.'s Supp. Mem. (Docket No. 7) at 11-15.) Abdurrahman also claims that the UFPEA violates 3 U.S.C.

6

§ 5 by allowing Secretary Simon to remove appointed electors less than six days before their vote.

First, the UFPEA does not violate 3 U.S.C. § 5.  Using its Constitutional power to choose the time when electors are appointed by the states, Congress required that a state's selection of electors shall be conclusive and govern in the counting of the electoral votes if the selection process is completed six days before the meeting of the electoral college.  3 U.S.C. § 5; see also Bush v. Gore, 531 U.S. 98, 113 (2000).  Abdurrahman argues that by determining how an elector may vacate their office on the day of the vote, Minn. Stat. § 208.46 conflicts with § 5 because the selection of electors was not completed six days before the vote.  But § 5 merely requires a state to have determined who its electors will be six days before the Electoral College meets and votes.  It does not proscribe states from determining whether an elector has vacated his office—for any number of reasons—and appointing an alternate elector to fulfill that duty.  Abdurrahman's real complaint is with how Minnesota determines whether an elector has vacated their office, which in turn raises the issue of the UFPEA's constitutionality.  Whether the UFPEA is constitutional is a closer call.

Article II Section 1 of the Constitution provides that "[e]ach state shall appoint, in such manner as the Legislature thereof may direct, a number of electors equal to the whole number of Senators and Representatives to which the State may be entitled in the Congress." U.S. Const. Art. II, § 1, cl. 2.  The Twelfth Amendment further provides that:

> The electors shall meet in their respective states, and vote by ballot for two persons, of whom one at least shall not be an inhabitant of the same state with themselves.  And they shall make a list of all the persons voted for,

>and of the number of votes for each; which list they shall sign and certify, and transmit sealed to the seat of the government of the United States, directed to the President of the Senate.

U.S. Const. amend. XII.

On the one hand, Abdurrahman's argument is quite simple.  The Constitution empowers him, as an elector, to vote for the President and Vice President.  By requiring Secretary Simon to remove Abdurrahman as an elector after he voted against his pledge, Minn. Stat. § 208.46 unconstitutionally deprives Abdurrahman of his right to vote as an elector.  Furthermore, the Constitution mandates that the electors themselves shall make a list of the electors and their votes, and sign, certify, and transmit that list to the President of the Senate.  By mandating that the Minnesota Secretary of State shall process and transmit the signed certificate of ascertainment to the President of the Senate, Minn. Stat. § 208.47 unconstitutionally relieves Abdurrahman and his fellow electors of their duty to transmit the list of electors and their votes to the President of the Senate.

On the other hand, since the inception of the Electoral College, the elector's role has been severely limited.  Along with empowering the electors to vote, the Constitution also empowers the states to direct and control how electors are appointed.  Indeed, the Supreme Court has held that this power is "plenary."  McPherson v. Blacker, 146 U.S. 1, 35 (1892).  Consequently, states and political parties may, for example, require that potential electors take a pledge to vote for the party's nominee if ultimately selected as an elector.  Ray v. Blair, 343 U.S. 214, 231 (1952).  Blair did leave open the question Abdurrahman raises: whether the enforcement of such a pledge is constitutional.  See Blair, 343 U.S. at 230 ("even if such promises of candidates for the electoral college are

8

legally unenforceable because violative of an assumed constitutional freedom of the elector under the Constitution . . . to vote as he may choose in the electoral college, it would not follow that the requirement of a pledge in the primary is unconstitutional"). But Blair also implied that such enforcement would be constitutional, noting that since the first election held under the Constitution, the people looked beyond the electors, "fixed upon their own candidates for President and Vice President and took pledges from the electoral candidates to obey their will. In every subsequent election, the same thing has been done." Blair, 343 U.S. at 230 n.15 (quoting S. Rep. No. 22, 19th Cong., 1st Sess. (1826), p. 4). Electors are therefore not the "independent body and superior characters which they were intended to be. They are not left to the exercise of their own judgment: on the contrary, they give their vote, or bind themselves to give it, according to the will of their constituents." Id. Instead, they have "degenerated into mere agents, in a case which requires no agency, and where the agent must be useless, if he is faithful, and dangerous, if he is not." Id. Since Blair, the Supreme Court has reiterated that "[h]istory has now favored the voter." Bush v. Gore, 531 U.S. 98, 104 (2000) (explaining that each state now allows citizens to vote for Presidential electors rather than the legislatures).

But these compelling, yet briefly-stated arguments on each side of this constitutional question only highlight the rigorous standard imposed when determining whether preliminary injunctive relief is appropriate. Because Abdurrahman has not met his burden that he is likely to succeed on the merits, this factor favors denying preliminary injunctive relief. Furthermore, because the likelihood of success on the

9

merits is such a close call the three remaining Dataphase factors become increasingly important.

### 2. Irreparable harm

Abdurrahman claims that he will suffer irreparable harm if he is denied a preliminary injunction because his vote as an elector will not be counted and transmitted to the President of the Senate. This harm, however, is self-inflicted. By the time Abdurrahman took his pledge in August, Hillary Clinton had already accepted the Democratic Party's nomination for President. Abdurrahman therefore knew that he was pledging to vote for the Clinton/Kaine ticket. If, in good conscience, he could not do so, he should not have taken the pledge. By taking the pledge, Abdurrahman was communicating to Minnesota voters that he would vote for Clinton and Kaine if they won the Minnesota popular vote on November 8. To now say that Secretary Simon harmed him by refusing to accept his vote that was cast in violation of his pledge is disingenuous. What little harm Abdurrahman suffers when faced with the known consequences of breaking his pledge is of his own doing.

### 3. Balance of harm

In contrast to Abdurrahman's slight, self-inflicted harm, Minnesota voters will suffer tremendous harm if Abdurrahman is granted a preliminary injunction. Minnesotans have an interest in their votes counting. If Abdurrahman was granted a preliminary injunction and allowed to vote for Bernie Sanders and Tulsi Gabbard, this would essentially reduce the votes cast by the Minnesota electorate. Such harm on the citizens of Minnesota is much greater than any harm suffered by an elector who ignored

his pledge to those citizens. Like Abdurrahman, Minnesota Democrats also preferred Bernie Sanders over Hillary Clinton and voted for him in the Minnesota Democratic Caucus. But unlike Abdurrahman, Minnesota voters ultimately united after Hillary Clinton accepted the Democratic Party's nomination and voted for her instead of Sanders. Abdurrahman should have done the same on December 19. By not doing so he directly harmed Minnesota voters. A preliminary injunction restoring Abdurrahman's vote would only further harm them.

### 4. The public interest

As previously discussed, the public-interest factor weighs heavily in favor of denying Abdurrahman's preliminary injunction. Minnesota voters had a pledged expectation that Abdurrahman would vote for Clinton and Kaine. That expectation is reasonable and well-grounded in our nation's history.

**CONCLUSION**

Abdurrahman's claim is moot and barred by laches. In addition, Abdurrahman's claim fails to meet the requirements for a preliminary injunction. Accordingly, **IT IS HEREBY ORDERED** that:

1. Abdurrahman's Motion for a Preliminary Injunction (Docket No. 5) is **DENIED**;

2. Abdurrahman's Complaint (Docket No. 1) is **DISMISSED as moot**;

3. Abdurrahman's Ex Parte Motion to Shorten Briefing Schedules (Docket No. 8) is **DENIED as moot**; and

4.	Abdurrahman's Motion for Summary Judgment (Docket No. 11) is

   **DENIED as moot.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: December 23, 2016

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge